The Honorable and the Judges of the United States Court of Appeals for the 4th Circuit Please be seated We are here to hear our final case, Singh v. Bondi and Ms. Moreira Good morning Good morning to the Honorable Court, my name is Guido Moreira and I'm here arguing on behalf of my client Gurwinder Singh and Singh v. Bondi It's a case in which my client was found to have submitted a frivolous asylum application which forever bars him from any form of relief under the Immigration and Nationality Act The government has raised some arguments regarding the court's jurisdiction in this case that I'd like to briefly address based on the Supreme Court's decision in Patel v. Garland arguing that this frivolous asylum finding relates in this case to a discretionary determination regarding adjustment of status and that the court would not have jurisdiction to address the issues raised in the petitioner's brief But I do think there is an important and interesting legal argument in this case and legal issue which is whether the agency, the BIA or the immigration judge has a discretionary authority to withhold entering a frivolous asylum bar even after finding that the requirements of the board under matter of Y.L. have been satisfied And one reason that this is a very interesting legal issue is because in fact the BIA has declined to address this issue in many circumstances even though it does potentially affect a large number of cases that come before it and that would eventually end up in federal court such as this one Now what's the issue you say they declined to address? Whether the agency, being both the BIA and the immigration judge, have the discretionary authority not to enter a frivolous finding even when the factual requirements of a frivolous finding have been met Is that based on statute? It is based on the statute The persuasive analysis that we discuss in our opening brief is regarding the 2nd Circuit's treatment of this issue in Meijuan Zhang v. Mukasey and Meijuan Zhang v. Holder And in those cases the 2nd Circuit looked at the statute and at the regulation which is that the statute is 8 U.S.C. 1158 at D6 and the regulation at 8 CFR 208.2 And the 2nd Circuit determined that it's ambiguous as to whether the word determination in the statute is referring to simply applying the requirements of matter of YL or whether this word determination includes a discretionary element And the 2nd Circuit noted that the BIA had not issued a published decision about this They did invite the BIA to address this issue and the BIA only issued an unpublished decision about it which the 2nd Circuit found not to be persuasive And so the 2nd Circuit in its 2012 decision in Meijuan Zhang v. Holder they did determine that there is discretionary authority for the agency to withhold a frivolous asylum finding even when the requirements of a frivolous asylum finding have been met and this would be based on discretionary equity In the present case, the immigration judge and the BIA both, again, declined to actually address and answer the question of whether there is discretionary authority to do so However, the immigration judge indicated that it was not necessary to decide this legal issue because even if it was that the discretionary equities in this case would not be sufficient to make that discretionary determination And our argument as we set forth in the brief Well, the BIA ended up adopting and affirming the decision of the immigration judge without really adding any of its own analysis or findings And our argument that we raised in the brief is that being that the immigration judge is now the final agency determination after being adopted by the BIA that it's not actually sufficient to uphold that conclusion that it need not actually reach the issue of whether it has the discretionary authority to withhold the frivolous asylum finding because of certain negative equities And in this case, the immigration judge pointed to the fact that in this case, Mr. Singh did admit that he lied about his asylum claim that he said things that happened that did not happen They said that those negative factors Everything he said is pretty much Yes, his asylum claim He made it all up Made it up out of hope law Yeah, well, what he says is that He said his lawyer made it up His lawyer made it up, that's correct Well, other places he said he made it up There's a tension in his own testimony Well, that wasn't in his testimony That was based on I believe that was based on what USCIS said that he said during their investigation I remember reading I'm not quite sure where the testimony was but it was actually quoted testimony of his where he said he agreed he had made it up I believe that in this case it would be It may have been a misunderstanding but that when he spoke about it at length and in detail he said that what happened was he gave his real story to the lawyers The lawyers worked on it to write up his written statement And then when he saw what they had written he saw that it was that they made up a different story and they told him that this is what you were supposed to do This is what you have to do That's what he had to do to win his case Yeah, that is what he has to do with his case So there's an issue where he was relying on legal counsel and they told him to do something that was certainly I'd have to go back and look at this but there were several references earlier where he took responsibility for making it up and creating it I sort of think that it was late in the game he started pushing on to the attorneys and it looked like an additional effort to deflect his responsibility Yeah But that would require some spelling out in the record but that's what I remember reading Understood I believe I believe it may have been that he was just admitting at first that the story was made up and then later he went into more detail about how the story was actually created What he wants is to get asylum now in spite of the fact that he made up this false story in his first effort to get asylum Well, the main issue that he was going for in front of the court now Pardon? I'm sorry I said not a lot of equity on his side Well, that's correct The main equities on his side as far as discretionary equities is his ties to U.S. citizen family members who he takes care of and who would greatly suffer if he is removed from the United States And the most important thing that the immigration judge did not do in this case was actually discuss any of these positive equities in determining that even if he does have discretionary authority to withhold the frivolous asylum finding that it would not be warranted And the reason that that's an error of law is because the board has made clear in its published decisions that making discretionary determinations requires factual findings and weighing positive factors as well as negative factors In the current case, the government argued that there actually are no discretionary factors that are required to be looked at in this context because that would only apply in contexts where someone is applying for relief But I do have a citation I'd like to bring up which is Matter of MMA That's 28 INN 494 And that's a BIA case where they discussed discretionary matters having to do with the frivolous asylum finding But they did ultimately decline to decide whether there is such a discretionary authority to withhold the frivolous asylum conclusion after the requirements have been met under Matter of YL And in that case, they did leave it open that an immigration judge could make a discretionary determination in this way and that the BIA itself would then have a de novo review over it And they emphasized that in order for them to have that de novo review and exercise it properly, the immigration judge has to weigh the positive and negative factors to put it into the record since the immigration judge is the finder of fact and the BIA would be looking at their findings Is this a recent case? I believe this is 2022, so it's somewhat recent I'm not sure how these so-called equitable factors can overcome the string of just outright lies He had to know what his lawyer was saying But there are so many issues here that went directly to the question of materiality and to the heart of whether there was a well-founded fear of persecution And that's just a basic hurdle that somebody has to cross as to whether there's a well-founded fear of persecution And there's just a string of lies here Lie after lie after lie after lie And I don't understand how the discretionary factors can overcome the fabrications about his brother disappeared and he had all these threats and harm and threats of harm and threats from Indian police and all the rest And they're just fabrications They're just false And if we were to reverse the IJ and BIA here wouldn't we be putting a premium on lying? I certainly don't think that we would be rewarding lying in this case by requiring the BIA to actually follow its own In this case, yeah In this case, certainly the facts of what my client did Excuse me Here you have a situation where the whole asylum process determines I mean, rests upon credibility And when we often look at these cases we say, well, did the IJ make a finding about whether the witness was credible and the rest And the entire asylum process depends, it seems to me to a considerable effect to a considerable extent on truthfulness and honesty And this isn't just one lie It's lie after lie after lie And it goes directly to whether there's a well-founded fear of persecution And I think if we were to reverse the district court on here we would be inviting and encouraging the manipulation of facts and fabrications and untruths And this asylum process, as you know, is one where people have an incentive sometimes not to tell the truth so that they can get a favorable result And there are many people that do tell the truth No question about that There are many people that are credible But there are also people who are not credible at all And because of the incentive that exists to succeed on an asylum claim they make up stuff They make up claims And a decision along the lines that you've mentioned to us I keep coming back I think we would be putting a premium and putting a green light, flashing a green light to misrepresentation, fabrication And courts can't work on that basis Whether it's an asylum claim or whether it's an ordinary civil case Our whole system depends upon honesty And that's what was missing here And that's what we shouldn't encourage That's my problem with what you're saying Whether it's an immigration case or a criminal case or a civil case or a witness or an applicant, petitioner The whole system depends on truth And if it lacks truth, it collapses like a house of cards And that's... I just want to be honest with you That's my problem You've given a good argument, and I respect that But I have this basic difficulty You see what I'm saying? I certainly understand and associate And I have the same... I even have the same concerns myself But in this case, we're not really asking... We're not asking the court to weigh any of the equities in themselves But it's about requiring that the agency actually... Well, that it enforce its own... That it decide for itself whether this authority exists which it's kind of avoided doing and declined to do despite being invited to by federal courts for maybe as much as two decades now that they've consistently declined to decide this specific issue And then, because of the board's own precedent saying that the discretionary factors have to be addressed in an explicit manner by the immigration judge for the board then to have its own decision that the BIA actually erred as a matter of law in this case by rubber-stamping the immigration judge's decision where the immigration judge did not actually comply with the board's precedent and... Thank you, counsel. Also note that you have some rebuttal time that you've reserved. Thank you very much. Ms. Snyder. Good morning, your honors. May it please the court. My name is Alana Snyder. I'm appearing today on behalf of the United States Attorney General We're asking your honors to dismiss in part and deny in part this petition for review for three reasons. First, the court does not have jurisdiction to consider the agency's determination that petitioner is ineligible for discretionary relief pursuant to the discretionary review bar 8 U.S. Code section 1251 A2BI and Patel v. Garland. Second, even if the court determines that it does have jurisdiction the agency's frivolous asylum finding is fully supported. In which case we deny everything. Deny the petition for review. The dismissal part of the petition. Deny the petition for review. Yes. Why wouldn't you just want to deny rather than get into this thorny issue of, you know, we've been wrestling a long time with what's discretionary, what's fact-finding, what's discretionary, what's a question of law or of constitutional law. You know, we could wax very philosophical about the nature of facts and the nature of law. And yet the case has a basic problem here and that is a problem with honesty and truthfulness and you just go to the heart of it and deny the petition. You wouldn't want to get all tangled up in this other business, would you? I think that's a fair question but I think when there's a jurisdictional question that we think is squarely presented before your honors we have the obligation to bring it and we think that the court, you know, wants to at least get involved with answering that question. We think Patel is a square application here. We think there's a lot of similarity with Patel, right? We had an adverse credibility determination in Patel, a disqualification for adjustment of status on the basis of inadmissibility which of course was in the statute, is in 8 U.S. Code section 1255 subsection A and here we have a disqualification for adjustment of status based upon 8 U.S. Code section 1155 D6. So I do think there's a lot of parity between and similarity between Patel and the instant case. So I do think the government brings this up before your honors not just because we have a strong case on the frivolous asylum claim as your honors very aptly pointed out previously when my friend was before your honors but also because we think we have an obligation to bring it before the court. Well, I'm not quarreling with your obligation. I understand it because you have a client and here you are but then again you would not necessarily quarrel with my assessment that there may be a very straightforward means of addressing this case that would spare us the nevels and this illegal tangle. It's not a desire to avoid a jurisdictional question. It's just a desire sometimes to dispense what is obviously a just result in a straightforward and expeditious manner.  And I think to both Judges King and Nehemiah's questions I think it's absolutely very clear that the petitioner and of course Judge Wilkinson what you were talking about before I think it's very clear that the frivolous asylum finding in this case is fully supported. The petitioner did in fact fabricate two major claims and also omitted a major part of his history the fact that he had served in the Indian military for 16 years which would have prevented an immigration judge from at least examining whether he had some sort of bar to asylum. But to your specific question about whether the petitioner had flip-flopped on whether it was him who made up the story I would direct your honors to pages 691 and 692 of the administrative record. I've got it right before me. Okay. He said he had a little help but he said I made it up from facts that I knew back in Amaristar. He says when you say you did the story yourself what does that mean? Me and the other guy. And then he says how did you come up with the arrest? These happened so that gave you ideas. He says I'm from Amaristar. There's a lot of cases like this over there. That's in mind. A lot of people killed. So I told him I'm from here from the village close to Amaristar and we see a lot of cases over here. He goes on and explains how he got it. He said this one means a specific instance of the harm. Yes, I made my story myself and this guy helped me a little bit. That's what he gave me to a guy with a lawyer name. Yeah, and the immigration judge did give the petitioner an opportunity, multiple opportunities at administrative record 286 and 311. The opportunity to explain this sort of testimony and sort of try to reconcile the fact that later on in his testimony he had stated no, actually it was just the attorney. So the immigration judge did what was exactly required here under that four-part test that my friend had referenced in matter of YL. Address your colleague talked about an implicit right to waive in a Second Circuit opinion. Yes, the Zane case. What's your position on that? So our position is that the court doesn't need to reach the Zane case. Really I think the question of the Zane case comes up as to whether or not it's a matter of discretion whether or not the immigration judge can launch a frivolous asylum finding in the first instance. And so part of the reason why this would even come up is whether if the court goes down that jurisdictional route that Judge Wilkinson and I were just discussing. So if the court goes down that jurisdictional route then of course the court would only have jurisdiction over factual or excuse me, over legal determinations. And constitutional jurors. And constitutional questions of course. And so I think my friend is bringing that up to say well if the question of whether the immigration judge has discretion to launch that inquiry in the first place that of course would be a legal question. We don't dispute that. That obviously would be a legal determination. Our position on that is that question is irrelevant to the disposition of this petition for review. And that's because the immigration judge basically said I'm not going to resolve that. The board has said we're agreeing with that. That is irrelevant here because even if I did have the discretion I'm going to assume I have the discretion. Basically I would not exercise my discretion to withhold that frivolous asylum finding. Essentially I would go on to find you frivolous. And contrary to what my friend said the immigration judge did discharge a discretionary analysis. The immigration judge on page 210 of the administrative record went through factors. It's just factors that I'm sure my friend didn't want to examine which essentially was the reason why Petitioner had the length of time that he had in the United States is because he lied on his asylum application and then was able to bring over his wife who then became a United States citizen and by the way reapplied for him to adjust his status. So the reason why he was able to readjust his status is through his wife who got her status and adjusted her status to a green card holder through his original fraudulent application. So the only reason why he has all these equities essentially says the immigration judge is through that original fraud in inception. And so again the immigration judge did look at these discretionary factors it's just that it didn't come out the way that the petitioner would have liked. So again your honors there's really even if the court wants to say it's a discretionary analysis which I don't think your honors have to it would still come out not in favor of what the petitioner is asking for here. Anything further? With respect unless your honors have any further questions. Well let me know if there's any further questions. You're fine. Thank you. Mr. Marrero you have some rebuttal time. Thank you your honors. I would just like to add on a little bit of discussion regarding the Second Circuit's analysis in Cheng. They did actually specifically discuss that there's two separate places where the discretionary decision of an immigration judge could possibly come into effect when it comes to an important discretion. What discretion are you focusing on in this case? So in this case I'm discussing since the immigration judge Let's assume you have discretion. Which discretion to do what? So the discretion in this case would be to say that even though Mr. Singh has submitted a frivolous asylum application that meets the requirements for a frivolous asylum application finding under matter of Y.L. that there still would be a discretionary authority to withhold that ultimate frivolous asylum bar based on positive equities such as But that's not in the statute. That's not in the statute but the Second Circuit said that it's ambiguous and the BIA has repeatedly declined That would be the same as disregarding his lives and awarding him asylum. Well in this case, well it wouldn't be awarding him asylum in this case he was applying for a different form of relief many years later after his frivolous asylum finding. That's the procedural But he was applying for citizenship wasn't he? Well he had been applying for citizenship that's when it came to light that he had lied in his asylum he was then placed in removal proceedings That's what I remember reading Your colleague quoted that from his testimony there and he said I made it up with a little bit of help here and then he explained how he made it up and why he made it up and then later in the proceedings he seems to want to deflect it all to his attorneys which I found disingenuous in and of itself. That's a terrible accusation to make against your lawyer that the lawyer, that his lawyer made up this false story to get him to file it all. Well certainly it is a very serious accusation against the lawyer If it's true, or were true that the lawyer is not fit to be practicing law Not only would the lawyer not be fit to be practicing law but it's possible that the lawyer could be something along the lines of a criminal could be doing this in many other cases Well certainly and could be coercing people in a way that ends up causing them very, very harsh consequences under the immigration law So the idea that there may have been some coercion from an attorney involved is certainly at least some consideration that could be relevant for a discretionary decision He starts pleading that it was my attorney's fault I didn't know this stuff That really is a real overstatement Well, I think it's clear that the attorney was involved was involved closely and at least working with him and I don't think there's anything in the record that really directly contradicts his claim that they're the ones who told him that he shouldn't tell his real story that his real story wouldn't do and that he needed to tell, I guess, a stronger story that they worked on with him which, of course, that is very terrible on behalf of those attorneys who helped him But that is something that would go towards this kind of decision if there is the authority to make a discretionary analysis after determining that YL applies So the Second Circuit is the only circuit that's applied that implied waiver and the agency refuses to adopt it Is that what you're telling us? As far as I can tell I don't think any court has specifically said that there is no discretion The Second Circuit is the only one that said there is and that was, a big part of that analysis was the fact that the BIA did not issue a published decision and only issued an unpersuasive unpublished decision indicating that they couldn't exercise this form of discretion Whereas in their published decision in MMA they said that an immigration judge should weigh all positive and negative factors on the record so that they could issue a de novo discretionary analysis in their own decisions All right, we thank you very much, sir And thank you to the court We will adjourn court I want to thank our courtroom deputy for all her good assistance and we will adjourn court and come down and shake hands or fist bump hands or whatever you call it This honorable court stands adjourned until this afternoon God save the United States and this honorable court
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King